UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MANUEL DE JESUS SABILLON MUNOZ,

Petitioner,

v.

BRUCE SCOTT, Warden / Facility Administrator, Northwest Processing Center,

Respondent.

CASE NO. 2:26-cv-02420-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner's Petition for a Writ of Habeas Corpus ("habeas petition"). Dkt. No. 1. Having considered the Petition, the Government's second return memorandum[1] (Dkt. No. 12), Petitioner's Traverse (Dkt. No. 10), additional evidence requested by the Court (Dkt. Nos. 16–18; *see* Dkt. No. 15 (Order to Show Cause)), and the relevant record, the Court GRANTS the habeas petition and ORDERS Petitioner's release.

[1] *See infra* Section III.A.

## I. Background

Petitioner, proceeding pro se, is a noncitizen detained at the Northwest Immigration and Customs Enforcement Processing Center who challenges the legality of his detention and seeks a writ of habeas corpus. *See generally* Dkt. No. 1 (Petitioner for Writ of Habeas Corpus). Although Petitioner names only his immediate custodian, Warden Bruce Scott, as a respondent (*see id.* at 1), the United States of America ("the Government") has appeared as an interested party and is litigating the case to defend the lawfulness of Petitioner's detention. *See* Dkt. No. 6 (United States' Return Memorandum).

Petitioner previously sought a writ of habeas corpus on the ground that he was incorrectly classified as subject to mandatory detention under 8 U.S.C. 1225(b) and denied the opportunity to seek release on bond. *Sabillon Munoz v. Mullin*, No. C26-1254, 2026 WL 1295591, at *1 (W.D. Wash. May 12, 2026). His petition was granted, and the court ordered the respondents to either release Petitioner or provide him a bond hearing under 8 U.S.C. § 1226(a). *Id.* at 2.

A bond hearing was held for Petitioner on June 1, 2026, and he was denied bond on the basis that he poses a flight risk and/or a danger to the community. Dkt. No. 17-4 (Order of the Immigration Judge) at 2. In the present action, Petitioner alleges that his detention is unlawful on two grounds: first, that "the duration of Petitioner's imprisonment . . . strips his confinement of any transitory character, turning it into a prolonged, punitive, and potentially indefinite detention" (Dkt. No. 1 ¶ 20) that "has ceased to bear a reasonable or proportional relationship to the legitimate purposes of civil immigration detention" (*id.* ¶ 22) and, second, that the Immigration Judge ("IJ") overseeing Petitioner's court-ordered bond hearing committed a "manifest abuse of discretion and error of fact by classifying the Petitioner as a danger to the community based punitively on a pending criminal charge for DUI." Dkt. No. 1 ¶ 5; *see id.* ¶ 23.

In accordance with the briefing schedule set by the Court (Dkt. No. 4), the Government

filed a return memorandum on July 24, 2026. Dkt. No. 6. That filing did not address the merits of Petitioner's claim of legal error at his bond hearing, but instead argued that Petitioner was within the 90-day "removal period" defined by 8 U.S.C. § 1231(a)(1) and that any claims of wrongful detention under Section 1226(a) had become moot when Petitioner's removal order became final on June 29, 2026, after he failed to successfully file an appeal with the Board of Immigration Appeals ("BIA") during the time allotted. *Id.* at 5. According to the Government, Petitioner was therefore subject to mandatory detention. *Id.*

On August 4, 2026, Petitioner filed his traverse, supported by evidence that an appeal had been officially pending with the BIA since July 20, 2026, and thus the "legal authority for detention remains strictly under 8 U.S.C. § 1226(a) (pre-order detention) and NOT under § 1231(a)." Dkt. No. 10 at 2; *see* Dkt. No. 11-1 (Traverse Exhibits) at 3.

Two days later, without seeking leave of Court, the Government filed a "Notice of Correction and Supplemental Brief." Dkt. No. 12. This document acknowledged the "mistake[]" identified by Petitioner (*id* at 1), and went on to constitute an entirely new return memorandum, twice as long as the one the Government had originally filed. The Court, noting that this filing violated the local rules and "displayed no awareness of Petitioner's right to reply to the entirely new slate of arguments the Government purported to present," ordered the Government to show cause why the unauthorized filings should not be stricken and disregarded. Dkt. No. 15 at 3. In the same Order, the Court ordered the Government to file "any document(s) and any recording(s) that evidence the bases for the IJ's denial of bond, including the IJ's findings that (1) Petitioner poses a danger to the community and (2) Petitioner poses a risk of flight" so that the Court could adjudicate Petitioner's claim of legal error at his bond hearing. *Id.* at 5.

On August 24, 2026, the Government responded to the OSC and provided the Court with the requested materials. *See* Dkt. Nos. 16–18. The Government informed the Court that the BIA

had dismissed Petitioner's second administrative appeal on August 14, 2026, but that detention of Petitioner would continue to be governed by Section 1226(a) until at least his judicial appeal deadline of September 14, 2026. *See* Dkt. No. 16 at 4. The Government urged "that the Court should analyze Petitioner's current detention under the discretionary framework of § 1226(a), rather than treating the administrative finality of the removal order as automatically triggering § 1231 detention." *Id.* at 5.

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III. Discussion

### A. Whether the Court Will Strike the Government's Improper Filings

In its Order to Show Cause, the Court specifically requested "an explanation of the Government's position that the Department of Homeland Security 'could [not] have learned of Petitioner's appeal' before the BIA issued a filing receipt on July 29, 2026" (Dkt. No. 15 at 5 (quoting Dkt. No. 12 at 2)), noting that "this statement appears to contradict evidence in the record that Petitioner's appeal was accepted by the BIA on July 20, 2026, and was required to include a certificate of service on DHS" (*id.* (internal citations omitted)). In response, the Government acknowledged "that ICE had been served with Petitioner's second BIA appeal on July 15, 2026, Petitioner served ICE with his amended appeal on July 15, 2026, prior to the Government's July 24 Return, and that the BIA received that filing on July 20, 2026," but took the position "that service of this appeal did not establish that the BIA had accepted the

submission as a properly filed appeal" until the BIA issued a notice of receipt on July 29, 2026. Dkt. No. 16 at 3 (internal citations omitted).

The Court finds this explanation unsatisfying. The Government was served with Petitioner's second appeal on July 15, 2026, only a week after the BIA dismissed Petitioner's first appeal on account of a filing error. *See* Dkt. No. 17-6 (service copy). If and when the BIA received the same documents, Petitioner's detention would have been controlled by Section 1226(a). While the Government may in good faith have professed ignorance (nine days later) as to whether the served documents were ever filed, it had no basis for assuming that they were *not* filed. Indeed, the July 24, 2026, declaration of the Government's declarant, written *nine days after* ICE was served with the second appeal, misstates the status of Petitioner's first BIA appeal and conspicuously omits the critical fact that a second appeal had been served:

> On May 28, 2026, Petitioner appeared for a final merits hearing on his application for relief from removal. The Immigration Judge ("IJ") denied relief and ordered Petitioner removed from the United States to Honduras. Petitioner reserved the right the removal order to the Board of Immigration Appeals ("BIA") by June 28, 2026, but ERO does not have any record such an appeal was filed.

Dkt. No. 8 ¶ 10. In fact, Petitioner *did* timely file an appeal on June 29, 2026 (the operative deadline because June 28 was a Sunday), but this appeal was rejected due to a filing error. Dkt. No. 17-6 at 12. While ERO (Enforcement and Removal Operations, a subdivision of ICE) may not have had any record that an appeal was (properly) filed by June 28, 2026, ICE had been served with a notice of the second appeal (*id.* at 2), and that appeal was already open before the BIA (Dkt. No. 11-1 at 3). The Government's reliance on Deportation Officer Ouk's statement as evidence that "ICE records indicate that no appeal of Petitioner's removal order is currently pending" (Dkt. No. 6 at 4 (citing Dkt. No. 8 ¶ 10)) was not "imprecise," (Dkt. No. 16 at 6), it was wrong and materially misleading. This case demonstrates why the Government should not rely

(and should not expect the Court to rely) on a representation of "fact" based upon a single individual's review of the record of just one office within DHS.

Under these circumstances, along with the procedural errors detailed in the Order to Show Cause, the Court finds that it would be justified in striking the Government's unauthorized filings and relying on its original return memorandum. The Court also finds, however, that to strike the later filings would not serve the interests of either Party or the expedient resolution of this case. The Government's second return memorandum, not its first, appears to apply the correct legal standard to Petitioner's claims, and the Court has a strong preference for resolving issues on their merits. Yet and still, Respondent is not entitled to two return memoranda. The Court will therefore consider the Government's second return and its attachments (Dkt. Nos. 12–14) as replacing, not supplementing, its earlier, erroneous materials, and will not consider the original return and its attachments (Dkt. Nos. 6–9).

Finally, as a sanction for the Government's improper filings (and functionally untimely return), the Court will not consider the Government's procedural argument regarding administrative exhaustion. "The exhaustion requirement is prudential, rather than jurisdictional," *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017), and the Government forfeited this argument by failing to raise it in the original return memorandum, to which Petitioner directed his traverse. Petitioner has not had an opportunity to respond to the arguments in the Government's second response, and the Court finds that Petitioner would be unjustifiably prejudiced if the Court further delayed resolution of the habeas petition while awaiting supplementary briefing.[2]

---

[2] Without deciding the Government's administrative exhaustion argument, the Court further notes that this argument was unlikely to succeed. A court may waive the exhaustion requirement where "administrative remedies are inadequate or not efficacious," *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation modified), and courts in this District have repeatedly that BIA appeals of bond denials can presently take months to resolve, *see, e.g.*, *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1100 (W.D. Wash. 2026). If Petitioner is correct that his

**B. Petition for Writ of Habeas Corpus**

The Court looks first to Petitioner's claim that the Immigration Judge erred in denying him bond. Because this claim is sufficient to resolve the petition, the Court does not reach Petitioner's claim that his detention is unconstitutionally "prolonged, punitive, and potentially indefinite." Dkt. No. 1 ¶ 20.

**1. Administrative Exhaustion and Government's Stay Request**

The Government argues that the Court should require Petitioner to exhaust his administrative remedies by appealing his bond denial to the BIA before seeking judicial review (Dkt. No. 12 at 11) and that, in the alternative, the Court should "stay these proceedings for a minimum of thirty days to permit the IJ to issue a written bond memorandum" (*id.* at 9). The Court considers the Government's administrative exhaustion argument waived and declines to consider it for the reasons given above.

As for the Government's request for a 30-day stay to obtain a memorandum from the immigration judge, the Court finds this request to be without merit. A written IJ memorandum is a typical part of the BIA appeal process, and the Court is aware of no legal basis for pausing its proper review of the instant Petition to allow such a document to be presented here.[3] The IJ was

---

detention is unlawful and his immediate release is required, even a successful BIA appeal process is no adequate substitute for the swifter redress available through the habeas writ. *See Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954) (A petition for writ of habeas corpus is "entitled by statute to special, preferential consideration to insure expeditious hearing and determination.").

[3] The Government's argument that a stay should issue because "Petitioner failed to provide the evidence filed before the immigration court at his bond hearing in these habeas proceedings" (Dkt. No. 12 at 8) is very poorly taken, considering that, at the time the statement was made, the Government had *also* "failed to provide the evidence filed before the immigration court" despite having readier access to the administrative record than Petitioner, who is unrepresented and currently detained. This is also not the first time the Government has chosen to file a bare minimum of the record (often just the I-213), only for it to become clear once additional information has been ordered that the fuller record in the Government's possession shows a legally insufficient bond hearing was held. *See, e.g.*, *Roberts v. Scott*, No. C26-1333, 2026 WL 2071146, at *2 10 (W.D. Wash. July 17, 2026); Order on Petition for Writ of Habeas Corpus at 3, 18, *Saparali Uulu v. Scott*, C26-1631 (W.D. Wash. July 10, 2026). In any case, the Government's subsequent filing of the relevant administrative record moots its concern about the Court "improperly weigh[ing] unseen evidence against the evidence of record" (*id.* at 8)—though, to be clear, the Court's role here is not to "weigh . . . evidence" but to determine whether the evidence before the IJ could, as a manner of law, have supported the conclusion that Petitioner poses a "flight risk" or a "danger" that can justify denying him bond. *See infra* Section III.B.2.

required to provide his legal reasoning when he denied bond. 8 C.F.R. § 1003.19(f) ("The determination of an Immigration Judge with respect to custody status or bond redetermination shall be entered on the appropriate form at the time such decision is made and the parties shall be informed orally or in writing of the reasons for the decision."). The IJ chose not to provide his reasons in writing. *See* Dkt. No. 17-4 (Order of the Immigration Judge). He also could have had the hearing recorded, but he did not—an apparently intentional practice of the particular IJ who denied Petitioner's bond. *See Roberts v. Scott*, No. C26-1333, 2026 WL 2071146, at *5 (W.D. Wash. July 17, 2026) (describing a recording on which the same IJ "intentionally terminated a recording already in progress when he realized, two minutes into a [bond] hearing, that no District Court order was in place requiring a recording[.]").

The Government, whose agent was present at the bond hearing as an attorney for DHS, could also have provided the Court with evidence of the oral findings, if any, made by the IJ, but it did not. Here, the Parties appear to agree that the basis for the bond denial was Petitioner's pending DUI charge (*see* Dkt. No. 1 ¶ 5; *see id.* ¶ 23; Dkt. No. 12 at 8). The Court can consider whether that charge (along with any other evidence in the record), as a matter of law, could justify the IJ's dangerousness and/or flight risk finding, and sees no good reason to further delay habeas review that is rightfully within its jurisdiction. In other words, the Court will not punish Petitioner for the tactical decisions of DHS and the Immigration Court to ensure that as little evidence as possible existed of the basis for that finding.

The Government's administrative exhaustion argument is forfeited as untimely and its alternative request for a stay is denied.

//

//

//

**2. Merits of the Claim**[4]

At the initial Section 1226(a) bond hearing before the IJ, BIA precedent holds that Petitioner bore the burden of establishing that he "does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006). "Bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case." *Soto Gimenez v. Hernandez*, No. C26-966, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026). However, a noncitizen who is not subject to mandatory detention "generally is not and should not be detained or required to post bond except on a finding that he is a threat to the national security or that he is a poor bail risk." *Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976) (citations omitted).

"When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *6 (W.D. Wash. May 11, 2026) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)). "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). "Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). Here, because no opinion of the IJ is available, "the question is whether the evidence that the IJ relied on at the bond hearing could—as a matter of law—establish that [Petitioner] posed a flight risk" or a danger. *W.T.M. v. Bondi*, No. C25-2428, 2026 WL 262583, at *4 (W.D. Wash.

---

[4] The Government opted not to present arguments on the merits of Petitioner's claim of legal error (*see generally* Dkt. No. 12), instead relying on its stay request and asking that the Parties "be permitted to submit supplemental briefing addressing the merits of Petitioner's bond hearing challenge and any issues arising from the IJ's written analysis" (*id.* at 9). The Government has thus waived its opportunity to substantively rebut Petitioner's allegation of legal error.

Jan. 30, 2026) (alteration in original) (quoting *Garcia v. Hyde*, 817 F. Supp. 3d 112, 126 (D.R.I. 2025)). The Court finds that it could not.

When determining whether a noncitizen is a danger to the community or risk of flight, an IJ weighs both positive and negative factors, pursuant to BIA precedent. *See Guerra*, 24 I. & N. Dec. at 40; *see also Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "These factors may include any or all of the following:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Guerra*, 24 I. & N. Dec. at 40. Here, Petitioner provided the IJ with a 145-page packet including a personal declaration, several letters of support, evidence of stable residence and employment, and a guarantee of sponsorship by a U.S. citizenship. *See generally* Dkt. No. 17-3. This included unrebutted evidence of "community ties and good moral good character (*id.*at 3; *see, e.g.*, *id.* at 137, 139, 141), that Petitioner has been in the community for over four years "after fleeing Honduras due to a well-founded fear for my safety and life" (*id.* at 5), that he has no criminal history in any country other than his one DUI arrest and pending charge (*id.*), that he lives with his wife and her cousin (*id.* at 5), that his family has a close U.S. citizen friend who has committed to serve as his sponsor and guarantor (*id.* at 5, 12–129), that he has gainful employment to which he can return if released (*id.* at 141), and that he has "never missed an immigration court hearing, and . . . intend[s] to continue fully cooperating throughout [his]

immigration proceedings" (*id.* at 5). The Government initially provided Petitioner's Department of Homeland Security Form I-213 and his bare-bones order of removal, issued the day before the bond hearing by the same IJ who denied him bond. *See generally* Dkt. No. 17-2. The I-213 included a reference to Petitioner's March 7, 2026, DUI arrest (*id.* at 6), and stated that Petitioner entered the United States without inspection after repeatedly being expelled from the United States near the U.S.–Mexico border pursuant to "title 42 Covid restrictions," *id.* at 6–7; that he "complied without incident" and possessed no "weapons, contraband, or means of escape" at the time of his arrest by DHS (*id.* at 6); and that DHS initially considered him eligible for Voluntary Departure, which Petitioner refused, claiming a fear of return to Honduras (*id.* at 7). In a separate filing, the Government also provided the criminal complaint against Petitioner for Driving Under the Influence, a gross misdemeanor, along with the corresponding incident report. Dkt. No. 17-1.

Beyond a reference to the DUI charge (*see* Dkt. No. 12 at 8), the Government is silent as to any known or speculative basis for the IJ's bond denial, and they do not take a clear position on whether Petitioner was found to pose a flight risk, a danger, or both, or even whether the bond hearing was legally sound. *See generally* Dkt. No. 12.

The IJ who denied Petitioner's request for bond did not issue any written findings of fact or make any written record of the reasons for his decision. In fact, it is not even evident from the IJ's order whether a finding was made that Petitioner poses a danger, a risk of flight, or both. In a form order consisting only of checkboxes and an electronic signature, the IJ checked boxes indicating:

> [X] ORDERED that the request for a change in custody status be denied. No bond.
>
> [X] Respondent has failed to establish that he is not a Danger to the Community or a Flight Risk.
>
> [X] OTHER: Conditional release is: denied.

[X] OTHER: Ability to pay considered.

Dkt. No. 17-4 at 2–3. The Court also does not have access to any contemporaneous record of the proceedings and decision, and so has little information about the IJ's oral findings (if any were made). However, Petitioner offers in his sworn affidavit that the IJ "h[e]ld[] that my criminal arrest for DUI of March 2026 automatically and irrevocably turned me into a 'danger to the community.'" Dkt. No. 1-1 ¶ 12. The Government also appears to also view this as a basis or the sole basis for the bond denial, mentioning only "evidence of Petitioner's pending DUI charge" as the evidence considered by the IJ in reaching the decision to deny bond. Dkt. No. 12 at 8.

The record before the IJ appears to have included no evidence that Petitioner—married, employed, and rooted in the community—was likely to flee if released on bond. To the contrary, evidence presented by both Parties shows a record of cooperation with law enforcement instructions and immigration court requirements.

As for dangerousness, only one fact appears to have any rational relationship to such a finding: a single, still pending charge for driving under the influence. "The *Guerra* factor most pertinent to assessing dangerousness is the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Martinez*, 124 F.4th at 783 (citation modified). The mere existence of some criminal record is not enough. *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) ("*Guerra* contemplates that criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. . . . [N]ot every criminal record would support a finding of dangerousness."). Courts in this district have found that IJs abuse their discretion when they base a dangerousness finding on the mere existence of past arrests for minor, nonviolent offenses without "explain[ing] how these remote arrests outweigh the overwhelming evidence of [a noncitizen's] good character and community ties." *Garcia Miranda v. Hernandez*, No. C26-906,

2026 WL 1328227, at *4 (W.D. Wash. May 13, 2026); *see also, e.g.*, *Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1027 (W.D. Wash. 2019) (Where basis for dangerousness finding was years-old DUI and vehicular assault convictions, "[t]he IJ erred as a matter of law in failing to consider petitioner's flight risk and dangerousness on a current basis . . . [as well as] petitioner's sobriety and willingness to refrain from driving if he is released[.]") In short, something more than the simple fact of a criminal arrest or charge is required for a finding that a person poses a danger—but nothing more than a single arrest and charge appears in the record here. Additionally, as Petitioner points out, "the State of Washington—the competent authority in matters of public safety—had already formally determined that the Petitioner did not represent a societal danger" for that non-felony charge as he was released on bond at the time of his immigration arrest. Dkt. No. 1 ¶ 5. The evidence Petitioner presented to the IJ also included a Washington driver's license issued *after* his DUI arrest. *See* Dkt. No. 17-3 at 8.

In sum, the evidence presented at Petitioner's bond review hearing could not—as a matter of law—have supported the conclusion (by any standard) that Petitioner posed a danger or a flight risk that made him ineligible for bond. As such, the IJ either applied the wrong legal standard at the hearing or erred in applying the correct standard to the facts. Either way, the IJ abused his discretion and erred as a matter of law in finding that Petitioner poses a flight risk and/or a danger and in denying him bond. Because of this, the proceeding was fundamentally deficient, and Petitioner was denied due process of law. Accordingly, the Court finds that Petitioner is currently in custody in violation of the laws or Constitution of the United States and is entitled to habeas relief.

**C. Appropriate Remedy**

District courts have "a fair amount of flexibility" in fashioning specific habeas relief. Here, Petitioner was denied due process of law and kept in detention based on a legally

erroneous dangerousness and/or flight risk finding. In line with other courts in this District, and given the present circumstances, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026); *see also Tavurov*, 2026 WL 1283513, at *10 (finding IJ abused discretion in denying bond and ordering immediate release); *Loya Medina v. Hernandez*, No. C26-772, 2026 WL 1260848, at *8–9 (W.D. Wash. May 7, 2026) (same); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (same). Accordingly, the Court orders Petitioner's immediate release.

## IV. CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED. It is further ORDERED:

(1) Respondent, the Government, and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) SHALL release Petitioner from detention **within twenty-four (24) hours** of this Order under appropriate conditions of release;

(b) SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

Dated this 14th day of September, 2026.

Tana Lin
United States District Judge